UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| WILLIE MAE DANNER, } | |
| } | |
|     **Plaintiff,** } | |
| } | |
| v. } | Case No.: 7:12-CV-02391-RDP |
| } | |
| SUMTER COUNTY BOARD OF } | |
| EDUCATION, } | |
| } | |
|     **Defendant.** } | |

**MEMORANDUM OPINION**

This case is before the court on Defendant's Motion for Summary Judgment (Doc. #55), filed on February 6, 2014. The Motion (Doc. #55) has been fully briefed. (Docs. #57, #58, #59). For the reasons outlined below, the Motion (Doc. #55) is due to be denied.

**I.   Procedural History**

Plaintiff Willie Mae Danner ("Plaintiff" or "Danner") initiated this lawsuit on July 5, 2012 by filing an Application Under Section 706(f) of the Civil Rights Act of 1964 (Doc. #1) against Defendants Sumter County Board of Education ("Board"), Katie Jones Powell ("Powell"), and Fred Primm, II ("Primm") (collectively, "Defendants"). Plaintiff then filed an Amended Complaint (Doc. #3) and a Second Amended Complaint (Doc. #5), after which the Defendants filed Motions to Dismiss (Doc. #9 & #30). By Orders dated February 26, 2013 (Doc. #35) and February 28, 2013 (Doc. #37), the court dismissed all of Plaintiff's claims against Defendants Powell and Primm with prejudice.

On February 6, 2014, Defendant Board filed a Motion for Summary Judgment (Doc. #55), along with Evidentiary Materials (Doc. #56) and a Supporting Brief (Doc. #57). Plaintiff

filed her Response (Doc. #58) on February 27, 2014, and Defendant filed its Reply (Doc. #59) on March 13, 2014, rendering Defendant's Motion (Doc. #55) properly under submission.

## II.     Facts[1]

Plaintiff is an African-American female, whose entire professional career has been spent working as an educator in Sumter County, Alabama. (Doc. #5 at 14, 27). Plaintiff graduated from the University of West Alabama ("UWA") in 1978 with a bachelor's degree in elementary education, and began working as a special education teacher at Livingston Junior High School that same year. (Doc. #56, Ex. A, Pl. Dep. at 16, 23). Plaintiff remained as a special education teacher until 2001, and during that time she obtained a master's degree in special education (1985) and completed the necessary coursework for certification in educational administration (1999), all at UWA. (Doc. #56, Ex. A, Pl. Dep. at 16, 20, 25). In the fall of 2001, Livingston Junior High School switched to a dual-principal, administrative model, under which Plaintiff served as principal of the elementary division (kindergarten through fourth grade) and Ms. Bobbie Pope-Dubose ("Pope-Dubose") operated as principal of grades five through eight. (Doc. #56, Ex. A, Pl. Dep. at 25, 27).

During the 2009-2010 school year, the Sumter County Board of Education experienced significant financial difficulty, requiring the intervention of the State Department of Education and preventing the Board from continuing to use "local funds" to staff certain positions within the system. (Doc. #56, Ex. L at ¶ 5-6). One of these positions was Plaintiff's, which had to be supplemented by local monies because only one principal position was allocated to Livingston

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Junior High School by the State Department of Education. (Doc. #56, Ex. L at ¶ 7). In light of the system's strained finances and a decrease in enrollment at Livingston Jr. High School, the Board decided that the school should proceed with only one principal, rather than two. (*Id.*).

On June 24, 2010, the Board posted a job opening notice for Livingston Junior High School's new, sole principalship. (Doc. #56, Ex. L-1). Sometime thereafter, Plaintiff completed an online application for the position and scheduled an interview appointment. (Doc. #56, Ex. A, Pl. Dep. at 148-49). On July 12, 2010, a committee of parents, teachers, and administrators interviewed prospective candidates for the position of principal. (Doc. #56, Ex. A, Pl. Dep. at 144). Among those on the interview committee were Ms. Pope-Dubose (by that time a testing coordinator with the school system), Ms. Hermania Little Blakely, Ms. Robin Harrison (a third-grade teacher), Ms. Monique Deavers (a seventh/eighth-grade science teacher), Ms. Jackie Harris (a parent), and Mr. Primm (superintendent). (Doc. #56, Ex. A, Pl. Dep. at 145-46). Seven applicants (including Plaintiff) were interviewed that day, and each candidate received an individual score from the various committee members. (Doc. #56, Ex. L at ¶ 11). Pope-Dubose has stated in an affidavit that she remembers Superintendent Primm instructing the committee members to give Plaintiff low scores and stating that "he was going to recommend Miss Jemison for the job because she was younger and [Plaintiff] was older and . . . could retire." (Doc. #58, Ex. B). To the contrary, the other committee members have no recollection of such statements, recalling instead that Mr. Primm did not express interest or disinterest in any particular applicant based upon age. (Doc. #56, Exs. G, H, I, J).

After all of the candidates were interviewed, the committee members' scores were tallied and combined, resulting in a composite score for each candidate. (Doc. #56, Ex. L at ¶ 11). Plaintiff scored an 82, good for third place among the candidates, with only Cynthia Jemison

(84.5) and Dyana Thomas (83.5) scoring higher. (*Id.*; Doc. #56, Ex. L-2). Taking into account the scores generated by the interview committee (along with the candidates' respective qualifications), Superintendent Primm determined that Ms. Jemison was the best candidate for the principal position. (Doc. #56, Ex. L at ¶ 12).

On the morning of July 27, 2010, Superintendent Primm informed Plaintiff by hand-delivered letter that he intended to recommend the cancellation of her contract to the Board. (Doc. #58, Ex. G). That night, Superintendent Primm did, in fact, recommend to the Board that (a) Plaintiff's contract be terminated, and (b) Cynthia Jemison be hired as principal. (Doc. #56, Ex. B, Primm Dep. at 44-45). The Board took action in accordance with both of his recommendations, basing its cancellation of Plaintiff's contract, in particular, on "decreased enrollment or decreased funding and failure to obtain/maintain certification in current status." (Doc. #5 at 32).

**III.     Standard of Review**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to

4

interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

If the moving party bears the burden of proof at trial, it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact (*i.e.*, facts that would entitle it to a directed verdict if not controverted at trial). *Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of

evidence in the record to support a judgment for the nonmoving party on the issue in question. This method requires more than a simple statement that the nonmoving party cannot meet its burden at trial, but does not require evidence negating the nonmovant's claim; it simply requires the movant to show that there is an absence of evidence to support the nonmoving party's case. *Fitzpatrick*, 2 F.3d at 1115-16.

If the movant meets its initial burden by using this second method, the nonmoving party may either rely on evidence in the record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence that is sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## IV.   Discussion

After careful review of the Rule 56 record and the parties' briefs, and for the reasons stated below, the court concludes that Defendant's motion is due to be denied.

Plaintiff's Second Amended Complaint (Doc. #5) advances two causes of action: (1) discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), and (2) retaliation in violation of the ADEA.[2]  Plaintiff's claims are primarily based on the affidavit testimony of Bobbie Pope-Dubose, who asserts that Superintendent Primm made discriminatory remarks concerning Plaintiff during the interview process for the new principal position at Livingston Jr. High School. (Doc. #58, Ex. B).

---

[2] Plaintiff's Second Amended Complaint also purports to state a claim under Title VII of the Civil Rights Act of 1964.  However, during a telephone conference held on December 6, 2012, Plaintiff confirmed that the only claims she is asserting against Defendant are age discrimination and retaliation under the ADEA.  This information is reflected in the court's order issued that same day.  Consequently, the court only considers Plaintiff's age discrimination and retaliation claims, as those are the only claims remaining in this case.

Defendant's Motion for Summary Judgment (Doc. #55) seeks judgment as to both of Plaintiff's claims. In its Brief in Support of Summary Judgment (Doc. #56), Defendant primarily argues that Plaintiff's claims fail under the *McDonnell-Douglas* burden-shifting framework, which is used to evaluate ADEA claims that rely on circumstantial evidence. (Doc. #56 at 16-23). However, in doing so, Defendant not only misconstrues the supporting evidence set forth by Plaintiff, but also fails to comprehend the applicable standard for summary judgment. Indeed, Plaintiff's claims (particularly her claim for age discrimination) appear to rely upon direct evidence of discrimination (*i.e.*, Superintendent Primm's remarks, as recalled by Pope-Dubose, that because of Plaintiff's age, she should be scored lower than the other candidates). (Doc. #58, Ex. B). Alternatively, even if this evidence is more properly viewed as circumstantial evidence, it is sufficient to create a genuine issue of material fact, rendering summary judgment inappropriate at this time. Pope-Dubose has testified via affidavit that Primm told the committee (1) to score Plaintiff lower due to her age, (2) that he intended to recommend a younger employee for the position, and (3) that based upon the lower scores received by Plaintiff (which was 2.5 points lower than Thomas, the incumbent), he did recommend Plaintiff for the position. The fact that her testimony stands alone among that of the other committee members is of no moment here. At this stage of the proceedings, the court may not evaluate the credibility of a witness such as Pope-Dubose. Her testimony is sufficient to get this case to a jury.[3] Accordingly, Rule 56

---

[3] Summary judgment is only applicable where "there is *no genuine dispute as to any material fact* and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Here, Pope-Dubose's affidavit creates genuine issues of material fact as to (1) whether Superintendent Primm actually instructed the interview committee to give Plaintiff lower marks on the basis of her age, (2) whether the members of the interview committee actually graded Plaintiff's interview more harshly as a result of Superintendent Primm's exhortations, and (3) whether the Board was ultimately influenced by Superintendent Primm's allegedly discriminatory remarks.[3] Moreover, at the very least, Plaintiff has presented sufficient evidence for a jury to conclude that Defendant Board's cancellation of Plaintiff's contract and selection of a different candidate for the position of principal were motivated by age discrimination.

disposition of this matter is inappropriate, rendering Plaintiff's Motion for Summary Judgment (Doc. #55) due to be denied.

## V.     Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment (Doc. #55) is due to be denied.  Separate orders consistent with this memorandum opinion will be entered.

**DONE** and **ORDERED** this August 6, 2014.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE